UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KIM. J. STEVENSON-TOTA, *pro se*,

                      Plaintiff,

            -against-

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

                      Defendant.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
13-CV-3463 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

On October 28, 2002, Plaintiff Kim J. Stevenson-Tota ("Plaintiff") filed an application, *pro se*,[2] for Social Security disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), alleging that she became disabled on November 1, 2001. (*See* Certified Administrative Record ("R."), Dkt. Entry No. 23 at 24-26.) Her application was denied and Plaintiff requested a hearing. On January 20, 2004, Plaintiff appeared *pro se* and testified at a hearing before Administrative Law Judge Peter F. Crispino ("ALJ Crispino"). (R. 90-107.) By a decision dated January 30, 2004, the ALJ concluded Plaintiff was not disabled within the meaning of the Act. (R. 12-15.) On April 30, 2004, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 4-7.)

---

[1]     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Carolyn W. Colvin shall be substituted for Commissioner Michael J. Astrue as the defendant in this action.

[2]     *Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (citation and quotation marks omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases "there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) (citation omitted).

Plaintiff filed an appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g), which was captioned *Tota v. Comm'r*, 04-CV-2785(FB). In that action, the parties stipulated to remand to the Appeals Council for further administrative proceedings. (R. 137-40.) On May 1, 2006, Plaintiff appeared *pro se* and testified at a hearing before ALJ Crispino. (R. 147-66.) On February 1, 2007, the ALJ found Plaintiff not disabled through the date of the decision. (R. 117-28.) Plaintiff filed exceptions (R. 111-16), which the Appeals Council declined to review. Plaintiff then filed a second appeal in this District, which was captioned *Tota v. Comm'r*, 07-CV-5169 (ARR). In that action, the parties stipulated to remand.[3] (R. 472-75.) On July 10, 2009, ALJ Mark Solomon ("ALJ Solomon") conducted a supplemental hearing, at which Plaintiff appeared *pro se*. (R. 565-83.) On September 4, 2009, ALJ Solomon issued a decision concluding that Plaintiff was not disabled during the period November 1, 2001, to December 31, 2007. (R. 430-40.) Plaintiff filed exceptions (R. 428-29), which the Appeals Council declined to review (R. 425-27), thereby making ALJ Solomon's decision the final decision.

Plaintiff filed the instant appeal on June 12, 2013, seeking judicial review of the denial of benefits for the closed period November 1, 2001 through December 31, 2007. (*See* Complaint ("Compl."), Dkt. Entry No. 1.) The Commissioner moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking affirmance of the denial of benefits. (*See* Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Mem."), Dkt. Entry No. 20.) The Court construes *pro se* Plaintiff's submission in response as a cross-

---

[3] At the time of remand, Plaintiff had filed another claim for disability insurance benefits, with an alleged onset date of April 1, 2004. (R. 434, 455.) The Appeals Council consolidated that claim with the 2002 application and directed the ALJ to consider both on remand. (*Id.*) Moreover, On December 31, 2007, Plaintiff filed a claim for SSI due to a stroke she suffered from in October 2007. With respect to that application, Plaintiff was found to be disabled as of December 31, 2007, as she met the requirements for Listing 11.04B, central nervous system vascular accident. (R. 455.)

2

motion for judgment on the pleadings, seeking reversal of the Commissioner's decision, or alternatively, remand. (*See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem."), Dkt. Entry No. 21.) For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's motion for judgment on the pleadings is denied and this appeal is dismissed.

## BACKGROUND

A.  **Non-Medical and Self-Reported Evidence**

Plaintiff was born in 1957. (R. 47.) She obtained a GED and attended approximately one year of college. (R. 38, 82, 94, 150.) From 1995 to 1996, Plaintiff worked as a recruiter. (R. 33.) From 1996 to 1998, Plaintiff worked in mortgage sales. (*Id.*) From 1997 to 1998, she worked as a cashier in a bakery and at Dunkin Donuts. (*Id.*) For a few months in 2000 and 2001, she worked as a customer service representative for E-Z pass. (R. 33, 97-98.) From 2002 to 2003, she worked as a salesperson in department stores. (R. 77, 97, 153, 162-63.) Plaintiff worked as a cashier at Western Beef from October 2003 to February 25, 2004, at which point she was terminated due to tardiness, absenteeism, and poor attendance. (R. 86.)

On November 5, 2002, Plaintiff filed a disability report indicating that she could not walk due to pressure in her legs from cysts and liquid sacks in her abdomen. (R. 32.) She claimed that she experienced vertigo and nausea. (*Id.*) She indicated that these symptoms began in 1996, but she stopped working on November 11, 2001. (*Id.*) She was unable to seek medical treatment due to her lack of medical insurance. (R. 39.)

On January 20, 2004, Plaintiff appeared *pro se* and testified at a hearing before ALJ Crispino. (R. 88-107.) At the time of the hearing, Plaintiff was 46 years old[4] and testified that

---

[4] Plaintiff was 45 years old on the alleged onset date. As such, she was considered a "younger person" during all but the final year of the period at issue. *See* 20 C.F.R. § 404.1563(c), (d).

she worked twenty hours per week as a cashier. (R. 93-94.) Plaintiff testified that she lived alone and performed all household chores. (R. 93, 106.) She took public transportation to the hearing. (R. 94.) She stated that, although she was working part time, she would be unable to work full time because she could not stand for long periods of time and she regularly fainted. (R. 98-99.) A doctor prescribed estrogen and she attended physical therapy for her knees. (R. 99-100.) In March 2003, she had cysts removed from her abdomen. (R. 100-01.) She indicated that she had the ability to walk twelve blocks, sit for up to twenty minutes, stand for up to two hours, and lift objects no heavier than fifteen pounds (although she lifted items weighing twenty pounds at her current position). (R. 103-05.)

On March 2, 2004, Plaintiff filed a disability report indicating that several conditions impaired her ability to work, including thoracic and abdominal pressure, a mal-rotated right kidney, an enlarged torso, dizziness, nosebleeds, constipation, nausea, and mild strokes. (R. 76.) She indicated that she lost her position at Western Beef due to strokes. (*Id*.)

On May 1, 2006, Plaintiff appeared *pro se* and testified at a hearing before ALJ Crispino. (R. 146-66.) Plaintiff testified that she could not work because she suffered from an irregular heartbeat, as well as asthma, emphysema, obesity, bipolar disorder, and anxiety. (R. 154.) She last saw her treating physician in January 2006, but had not seen him since then due to her lack of medical insurance. (R. 155, 157.) She indicated that she experienced mild strokes and seizures every day. (R. 163-65.) She indicated that she had the ability to stand for half an hour, walk a block or two, and sit for an unlimited amount of time. (R. 159-60.) She could lift no more than a gallon of milk before experiencing pain. (R. 161.)

On July 10, 2009, Plaintiff appeared *pro se* and testified at a hearing before ALJ Solomon. (R. 566-93.) Plaintiff indicated that she began receiving SSI in December 2007, due

4

to a stroke that occurred in October 2007. (R. 567, 572.) Prior to March 31, 2005, Plaintiff suffered from vertigo, seizures, and severe depression. (R. 574-75.) She took Prozac. (R. 576.) She also suffered from emphysema and chronic obstructive pulmonary disease ("COPD"), for which she used a nebulizer. (R. 571, 577.) She had the ability to shop and take care of her personal needs. (R. 574.) She walked daily for exercise and performed her household chores, although her chores took longer. (R. 578.) She indicated that, from March 31, 2005 to 2007, her COPD became worse. (R. 580.)

**B.     Medical Evidence**

   **1.     Medical Evidence from November 1, 2001 (Alleged Onset Date) to March 31, 2005 (Date Last Insured for DIB)**

On November 15, 2002, Kyung Yoo, M.D., an internist at Staten Island Medical Group ("SIMG"), examined Plaintiff. (R. 345.) Dr. Yoo noted that Plaintiff's blood pressure was 140/80 and that Plaintiff weighed 182 pounds.[5] (*Id.*)

On December 4, 2002, Elsa Canton, M.D., a gynecologist at SIMG, examined Plaintiff. (R. 386.) Plaintiff complained of feeling movement in her abdomen. (*Id.*) On December 9, 2002, Plaintiff underwent an abdominal ultrasound, which revealed an enlarged liver. (R. 43.) Additionally, Plaintiff underwent a pelvic sonogram, which revealed an anteverted fibroid uterus with multiple myomas, and a complex cystic lesion in the right adnexal area. (*Id.*)

In a report dated December 18, 2002, Plaintiff's hypercholesterolemia was described as controlled. (R. 366.)

On December 19, 2002, Dr. Canton ordered an abdominal CT-scan. (R. 310.) On January 13, 2003, Plaintiff underwent pelvic and abdominal CT-scans, which revealed a slightly

---

[5]     Blood pressure ranges for mild hypertension are 140-159/90-99. *The Merck Manual of Diagnosis and Therapy*, 1633, Table (17th ed. 1999).

mal-rotated kidney. (R. 59-60.) Her bladder and uterus were within normal limits. (R. 59.) In the right adnexa, there was an ovoid hypodensity, possibly representing a right ovarian cyst. (R. 59-60.) Plaintiff discussed the results of her CT-scans with Dr. Yoo on January 17, 2003. (R. 346.) Dr. Yoo noted that Plaintiff's blood pressure was 140/80 and that she weighed 190 pounds. (*Id.*)

On February 27, 2003, Eli Serur, M.D., a gynecological oncologist at SIMG, examined Plaintiff. (R. 321.) Plaintiff complained of chronic pelvic pain, but was in no acute distress. (*Id.*) Dr. Serur diagnosed Plaintiff with chronic pelvic pain and fibroids. (*Id.*)

On March 28, 2003, C.S. Bhupathi, M.D., an orthopedist at SIMG, recommended that Plaintiff attend physical therapy and undergo x-rays of her left knee for left knee pain. (R. 348.) On March 31, 2004, Plaintiff underwent x-rays of her left knee, which revealed mild degenerative arthritis. (R. 307.) On April 4, 2003, Plaintiff visited Physical Therapy Associates, complaining of left knee pain. (R. 311.) Arthur Nelson, Ph.D., a physical therapist, noted that her x-rays were negative and recommended knee exercises. (R. 313.)

On April 30, 2003, Dr. Serur performed a laparoscopic-assisted hysterectomy. (R. 323.) On May 15, 2003, Dr. Serur noted that the wound was healing well and that there was mild cellulitis. (R. 303.)

On May 16, 2003, Plaintiff complained of chest pain to Dr. Yoo. (R. 349.) Dr. Yoo recommended that Plaintiff cease smoking. (*Id.*) She continued to visit Dr. Yoo for this issue. (R. 350-52.) On February 26, 2004, Plaintiff visited Dr. Yoo, complaining of lower abdominal pain. (R. 168.) Her blood pressure was 162/80. (*Id.*) Dr. Yoo diagnosed Plaintiff with constipation, anxiety, and hypertension. (*Id.*) She continued to visit Dr. Yoo regarding similar complaints. (R. 169-70, 355.)

On March 22, 2004, Plaintiff visited Andrew Kolbasovsky, Psy.D., for a consultation. (R. 171.) Dr. Kolbasovsky diagnosed Plaintiff with anxiety disorder not otherwise specified ("NOS"), and assigned a global assessment of functioning ("GAF") score of 65.[6] (*Id*.) He recommended that Plaintiff visit a psychiatrist and a therapist. (R. 294.)

On March 25, 2004, Plaintiff visited Jing Zhang, M.D., at SIMG, complaining of a rash on her inner thigh. (R. 172-73.) Dr. Zhang noted hypertension and prescribed Toprol and Norvasc, as well as Lipitor for her high cholesterol. (R. 173.) He recommended that Plaintiff cease smoking. (*Id*.) On May 12, 2004, Plaintiff visited Dr. Zhang, who noted that her blood pressure was controlled. (R. 359.)

On May 6, 2004, Janet Milton, a social worker at Saint Vincent Catholic Medical Center ("St. Vincent's") Behavioral Health Unit, completed an evaluation of Plaintiff. (R. 484-88, 491-94.) Plaintiff complained of stress and difficulty sleeping. (R. 487.) She had lost contact with her sons and her mother and, recently, was arrested for damaging a friend's vehicle. (*Id*.) On examination, Plaintiff appeared well dressed and groomed. (R. 495.) She easily performed serial subtraction and was able to spell "earth" backwards. (*Id*.) She recalled three of three objects immediately and two of three objects after five minutes. (*Id*.) She displayed good long term memory and coherent thought processes. (*Id*.) Ms. Milton diagnosed Plaintiff with anxiety disorder NOS, depression NOS, and assigned Plaintiff a GAF score of 62. (R. 494.) At a therapy session on that same date, Plaintiff indicated that she was anxious regarding estrangement from her children, the deaths of her parents, job loss, and divorce. (R. 498.)

---

[6] GAF is a rating system assessing overall psychological functioning on a scale of 0 to 100. A GAF of 61-70 is associated with mild symptoms or some difficulty in social, occupational, or school functioning but generally functioning fairly well. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-Text Revision* 34 (4th ed., rev. 2000) ("*DSM IV*").

On May 27, 2004, Santapuri Rao, M.D., a psychiatrist, examined Plaintiff. Plaintiff was alert and cooperative, with a depressed mood and constricted affect. (R. 490.) She had no signs of delusions, hallucinations, or phobias. (*Id.*) Dr. Rao diagnosed Plaintiff with depression NOS, and assigned a GAF score of 50-55.[7] (R. 489.) He prescribed Prozac and therapy. (*Id.*)

On June 4, 2004, Plaintiff returned to Dr. Zhang, seeking completion of a disability form. (R. 360-61.) Dr. Zhang declined to complete the form, explaining that she had "no medical reason" for her alleged disability. (R. 361.) On June 4, 2004, Dr. Zhang completed a workers' compensation form in connection with her prior work at Western Beef. (R. 290.) He noted that she was diagnosed with anxiety and depression. (*Id.*) He indicated that he was treating her for hypertension and high cholesterol, for which he prescribed Norvasc and Lipitor. (*Id.*)

During June 2004 through August 2004, Plaintiff continued to treat with Ms. Milton and Dr. Rao for her psychiatric impairments. (R. 500-02.) They reported that she had a neutral mood and appropriate affect. (*Id.*)

On August 24, 2004, Leonid Shkolnik, M.D., a neurologist at SIMG, examined Plaintiff in connection with her complaint of swollen eyes and fainting. (R. 175-77.) A test for facial weakness was negative. (*Id.*) Dr. Shkolnik recommended that Plaintiff follow-up in two weeks and noted no cause for the fainting symptoms. (*Id.*)

On September 13, 2004, Ms. Milton observed that Plaintiff was anxious; however, the next day, Plaintiff told Dr. Rao that she had no complaints. (R. 499.) After Plaintiff missed appointments and telephone calls with Ms. Milton later that month, Ms. Milton closed plaintiff's case. (*Id.*) Plaintiff ceased treating with Dr. Rao after the September 2004 visit. (R. 496.)

---

[7] A GAF of 51-60 is associated with "moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *DSM IV*, p. 32. A GAF of 41 to 50 reflects "[s]erious symptoms" or "any serious impairment in social, occupational, or school functioning." *DSM IV*, p.34.

8

On November 19, 2004, Plaintiff visited Dr. Zhang complaining of a cold. (R. 362-63.) He noted that her hypertension was controlled. (R. 362.) He counseled her on smoking cessation. (*Id*.)

On March 30, 2005, Plaintiff visited Dr. Zhang, complaining of confusion, nausea, and bilateral arm weakness. (R. 176.) She indicated that she might have experienced a seizure, but there were no witnesses to confirm her allegations. (*Id*.) On examination, Dr. Zhang found no abnormal findings. (R. 176-77.) Dr. Zhang referred Plaintiff to a neurologist for an electroencephalogram ("EEG"). (R. 183, 265, 285.) On May 30, 2005, Plaintiff visited Dr. Zhang and indicated that her seizures had subsided. (R. 178.) She complained of a cough, but x-rays of her chest were negative for disease. (R. 278.) On March 31, 2005, Plaintiff underwent an EEG, which was normal. (R. 280.)

2. **Medical Evidence from March 31, 2005 (Date Last Insured) to December 31, 2007 (Date Plaintiff Became Eligible for SSI Based on a Subsequent Application)**

On July 13, 2005, Dr. Shkolnik, a neurologist with SIMG, contacted Plaintiff regarding her failure to follow up regarding her complaints of strokes and seizures. (R. 364.) Plaintiff stated that she no longer experienced those symptoms and declined any further treatment. (*Id*.)

On August 19, 2005, Dr. Zhang examined Plaintiff for eye redness. (R. 179.) Dr. Zhang diagnosed Plaintiff with conjunctivitis and controlled hypertension, and noted that Plaintiff denied any further episodes of anxiety or seizures. (*Id*.) Plaintiff continued to treat for similar symptoms through October 2005. (R. 180-82, 344.)

On January 26, 2006, Plaintiff complained to Dr. Zhang of shortness of breath, with occasional wheezing. (R. 384.) She did not feel that she could work any longer. (*Id*.) On examination, Dr. Zhang noted that Plaintiff weighed 213 pounds and otherwise the findings were

normal. (*Id.*) Dr. Zhang recommended that Plaintiff cease smoking. (*Id.*) Dr. Zhang prepared a note indicating that Plaintiff was unable to work due to breathing difficulty and that she would not be able to work for possibly two or three months. (R. 416.) On February 2, 2006, Plaintiff underwent chest x-rays, which were normal. (R. 273.) On March 15, 2006, Plaintiff went to the Emergency Department at St. Vincent's, complaining of asthma and was prescribed an albuterol inhaler. (R. 420-43.)

On August 9, 2006, Dr. Rao completed a supplementary report for Guardian Life Insurance, indicating that he last treated Plaintiff in September 2004. (R. 496.) He indicated that Plaintiff was diagnosed with hypertension, high cholesterol, depression, and anxiety. (*Id.*)

Plaintiff continued to treat with Dr. Zhang for minor complaints. (R. 560-564.) On June 4, 2007, Plaintiff complained to Dr. Zhang of asthma and respiratory problems. (R. 557-59.) Dr. Zhang diagnosed Plaintiff with extrinsic asthma and an acute upper respiratory infection. (R. 558.) Chest x-rays were normal. (R. 554.) In June and August 2007, Plaintiff followed up with Deepak Vadhan, M.D., a pulmonologist at SIMG. (R. 547, 555-56.) On July 25, 2007, Plaintiff underwent a pulmonary function test, which revealed mild restriction of Plaintiff's airflow. (R. 548-51.) On July 26, 2007, Plaintiff told Dr. Zhang that she was short of breath, but Dr. Zhang noted that Plaintiff was in no apparent distress. (R. 552.) An examination revealed normal respiratory results. (*Id.*) He diagnosed her with high cholesterol, benign hypertension, asthma NOS, and emphysema not elsewhere classified ("NEC"). (R. 552-53.)

On October 31, 2007, Plaintiff was hospitalized with a stroke which was classified as a cerebrovascular accident ("CVA"). (R. 533.) A magnetic resonance image ("MRI") of the brain revealed small acute infarcts in the right occipital and the right posterior parietal distributions. (R. 539-40.) A magnetic resonance angiography ("MRA") of the carotid arteries revealed

suspicion of high grade stenosis in the right internal carotid. (R. 537.) An MRA of the brain revealed no intracranial vascular abnormality. (R. 538.) Plaintiff continued to treat at SIMG as an outpatient through December 2008. (R. 503-32.)

## DISCUSSION

### A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations."

11

*Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.    Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic

work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F. 2d at 642).

## C. The ALJ's Decision

On September 4, 2009, ALJ Solomon issued a decision concluding that Plaintiff was not disabled during the period November 1, 2001, to December 31, 2007. (R. 433-40.) The ALJ followed the five-step procedure in making his determination that Plaintiff was not disabled. (R. 435-36.) At the first step, the ALJ determined that Plaintiff had performed no substantial gainful activity since November 1, 2001. (R. 436.) At the second step, the ALJ found that Plaintiff failed to establish any severe impairments during the time period at issue. (*Id*.) The ALJ found that Plaintiff's asthma, emphysema, hypertension, history of seizures, and depression were medically determinable impairments, but neither alone nor in combination significantly limited Plaintiff's ability to perform basic work related activities for twelve consecutive months. (R. 436-40.) The ALJ did not proceed any further with the five-step analysis.

**D.     Application**

The Commissioner moves for judgment on the pleadings, seeking affirmance of the denial of Plaintiff's benefits on the grounds that the ALJ applied the correct legal standards to determine that Plaintiff was not disabled and the factual findings are supported by substantial evidence. (*See generally* Def. Mem.; Reply Mem. of Law in Further Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Reply Mem."), Dkt. Entry No. 22.) The Court construes Plaintiff's *pro se* submission as a cross-motion for judgment on the pleadings, contending the ALJ erred by failing to develop the record regarding a disabling right eye impairment. (*See generally* Pl.'s Mem.)

The ALJ's findings with respect to the first step of his analysis are not contested.

The only dispute is whether the ALJ appropriately found that none of the Plaintiff's impairments, individually or in combination, constituted a severe impairment. The Court concludes that the ALJ applied the appropriate legal standards and the decision is supported by substantial evidence. Plaintiff's arguments to the contrary are unfounded.

An impairment or combination of impairments is not severe unless it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities include: walking; standing; sitting; lifting; pushing; pulling; reaching; carrying; handling; seeing; hearing; speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Moreover, the disability resulting from a severe impairment must be "expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909.

None of Plaintiff's physical or mental impairments interfered with her ability to perform basic work activities. For example, her hypertension was mild and often described by her doctors as controlled. (R. 179, 182, 345-47, 350-51, 359, 362.) Indeed, on June 4, 2004, Dr. Zhang stated that there was "no medical reason" for Plaintiff to be considered disabled and declined to complete a form in support of her application. (R. 290, 361.)

Plaintiff's respiratory impairments, asthma NOS and emphysema, similarly did not rise to the level of a severe impairment. Chest x-rays were negative for lung disease. (R. 273, 278, 554.) A pulmonary function test revealed only mild restriction of airflow. (R. 548-51.) Dr. Zhang reported normal results for his respiratory examination on July 26, 2007. (R. 552.)

Regarding her alleged seizures, the ALJ correctly noted that she did not treat for this impairment during the period at issue. (R. 438, 524.) Plaintiff complained to Dr. Shkolnik of "several fainting spells" and was told to undergo an EEG and to follow-up with him in two weeks. (R. 175.) The EEG results were normal. (R. 280, 438.) Notably, in July 2005, Plaintiff told Dr. Shkolnik that she was no longer experiencing the symptoms and that she did not want to see a neurologist. (R. 364.) She did not return to Dr. Shkolnik until January 2008, which is after the relevant period. (R. 438, 524.)

Plaintiff complained of numerous other physical impairments, such as abdominal cysts and bloating, a left knee impairment, obesity, and a tilted right kidney. (R. 76, 99-100, 154, 574-75.) As the ALJ correctly noted, each of these impairments subsided within a short period of time, with no further complaints from Plaintiff, and none of these impairments had more than a minimal impact on Plaintiff's abilities. (R. 438.) The record supports this finding. (R. 59-60, 307, 311, 313, 321, 323, 347-48, 386.) Moreover, none of her physicians indicated that these particular impairments impacted her ability to work in any capacity.

15

One physician, Dr. Zhang, opined that, with respect to Plaintiff's alleged difficulty breathing, Plaintiff would be unable to work for possibly two to three months in 2006. (R. 438-39.) First, this opinion does not satisfy the duration requirement. Moreover, the ALJ properly applied the treating-physician rule to apply less weight to Dr. Zhang's opinion, as the objective medical evidence did not support the disability opinion.

With respect to Plaintiff's mental impairments, the ALJ adhered to the requisite "special technique" to assess the severity of Plaintiff's mental impairments (R. 439-40), meaning the ALJ reviewed four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, pace or persistence; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a(d)(1)).

The objective evidence in the record supports the ALJ's finding that Plaintiff's mental impairments were not severe. The ALJ found that Plaintiff had no limitations with respect to activities of daily living. (R. 439.) Plaintiff lived by herself, took public transportation alone, shopped, and handled all household chores. (R. 93-94, 106, 151, 574.) Plaintiff worked part time for various retailers during 2002 through 2004. These positions required her to interact with the public on a regular basis. (R. 76-77, 94, 97, 153, 162-63.) Plaintiff suffered from mild limitations with respect to persistence or pace. There was no evidence of any episodes of decompensation for an extended duration. (R. 439.) The ALJ evaluated the evidence concerning Plaintiff's depression and found that it only minimally limited her ability to perform work

activities. (R. 439-40.) On the whole, the medical evidence in the record supports this finding, as she only treated with a therapist for six months, responded well to medication, and reported improvements. (R. 171, 485-86, 495, 498, 500-02.) Plaintiff saw Dr. Rao four times. On August 9, 2006, although he had not examined Plaintiff since 2004, Dr. Rao opined that she was disabled. (R. 496.) The ALJ properly declined to assign "great weight" to this opinion as Dr. Rao's objective treatment notes did not indicate severe limitations. (R. 489, 499-501.)

Plaintiff's testimony as to the severity of her impairments is undermined by the evidence discussed above, as well as her testimony regarding her daily living activities. Thus, the ALJ did not err in assessing her credibility regarding her symptoms. (R. 439.)

Finally, contrary to her assertions, the ALJ did not ignore Plaintiff's alleged right eye-blindness. The only medical evidence of any ocular impairment involves one incident of conjunctivitis in 2005, which resolved shortly thereafter as Plaintiff took Tobradex. (R. 344.) There are no findings by any of her physicians indicating that this impairment impacted her ability to work or that it was anything more than episodic in duration. Dr. Zhang noted eye anomalies (not elsewhere classified) in 2008; however, this finding occurred after her stroke and after the close of the period at issue. (R. 510.) Accordingly, the ALJ properly evaluated the severity of Plaintiff's impairments.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's cross-motion for judgment on the pleadings is denied and this appeal is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
　　　　March 6, 2015

　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　　　　　　United States District Judge